## DANIEL JOHNSON

### V.

## THE PEOPLE OF THE STATE OF ILLINOIS, UPON RELATION OF FREDERICK J. NIEDEMEYER.

*Municipal Corporations—Plats, Vacation of—*Quo Warranto—*Eligibility for Office of Person Residing upon Vacated Addition.*

1. The making of a plat of a town, or an addition, is for the purpose of subdividing the land into smaller parcels, to be described by the terms, lots and blocks, and to invest the public with certain rights in the streets, alleys, and other public places therein designated.

2. There is no necessity that all the land within corporate boundaries shall be platted, and the municipal jurisdiction, so far as local improvement or government is concerned, is not barred by such fact; the ordinances may be enforced and all municipal functions may be exercised without hinderance.

Johnson v. The People.

3. The vacation of a portion of an addition to a town does not eliminate the same from its corporate limits.

4. Upon an information in the nature of a *quo warranto* charging a person named with usurping the office of police magistrate of a certain town, said person residing upon a portion of a vacated addition to said town, the only question being whether, owing to such vacation, he was eligible to such office, this court holds, in view of the evidence, that the judgment for the complainants can not stand, and directs that judgment be entered for the defendant in the information and that he recover his costs.

[Opinion filed December 3, 1891.]

APPEAL from the Circuit Court of Tazewell County; the Hon. N. W. GREEN, Judge, presiding.

This was an information in the nature of a *quo warranto*, charging appellant with usurping the office of police magistrate of the village of Tremont. Appellant justified, replications were filed, and on the trial the court found for appellees and entered final judgment on findings of *ouster* against appellant.

It appears from the record that in 1835 the original town of Tremont was laid out upon certain lands located upon two different congressional townships in Tazewell County, surveyed, platted, and the plat thereof certified, acknowledged, and in June, 1835, recorded in said county in accordance with the provisions of the act of February 27, 1833, entitled, "An act providing for the recording of town plats;" that in 1836 Philip Flagler, as proprietor of Flagler's addition to Tremont, caused to be laid out Flagler's addition to the town of Tremont on other land situated in said county; and said addition was surveyed and platted, and the plat thereof certified by said surveyor in October, 1836, acknowledged by the proprietor in March, 1838, and in April, 1838, recorded in said county, in accordance with the provisions of said act of February 27, 1833; that said original town and addition thereto remaining wholly unvacated, the General Assembly, by an act passed and in force the 27th day of February, 1841, entitled, "An act to incorporate the town of Tremont," enacted, among other things "that the resident inhabitants of

the town of Tremont, in Tazewell County, are hereby consti-
tuted a body politic and corporate," and by another part of
said act it was enacted, " that the limits of said town of Tre-
mont shall include all the district embraced in the town plat
of the original town of Tremont and the several additions to
said town, the plats of which have been recorded pursuant to
law."

Afterward, one Josiah Sawyer became the owner of all of
Flagler's addition to Tremont, except block six (6) thereof,
and lived upon that part so owned by him until the year
1872. After acquisition and possession by Sawyer, the act
of the General Assembly, passed and in force February 16,
1847, entitled, " An act to provide for the vacating of town
plats," became a law; and Sawyer, by virtue of the provisions
of that act, in the year 1852, by a formal writing designed
for the purpose, assumed to vacate the portion of Flagler's
addition to Tremont owned by him, being blocks 1, 2, 3, 4, 5,
7 and 8 and all the streets and alleys running between them;
and after this he continued to live upon the so vacated portion
until 1872, when he removed to the original town of Tremont,
where he subsequently, and before the commencement of this
suit, died; he continued, however, to own the land so vacated,
and one Baker was his tenant for a number of years. In 1878
the town of Tremont adopted village organization, under the
general act of April 10, 1872, entitled, " An act to provide for
the incorporation of cities and villages," and thereby became
incorporated as the village of Tremont. On the 16th of
April, 1889, there was held in said village, by the legal voters
thereof, a regular annual election pursuant to the provisions
of said general act of April 10, 1872, for, among other offices,
the office of police magistrate of said village; and at said elec-
tion appellant, who for more than one year preceding said
election, had resided upon block 5, part of the land so vacated
by Sawyer, in Flagler's addition to the town of Tremont, and
who, if he was by reason of such residence a resident of the
village of Tremont, it is admitted, was otherwise fully qualified
to be elected to said office, received a majority of all the votes
cast for said office and was duly qualified and commissioned

and was acting as such police magistrate at the time of the commencement of this suit; that appellant had continued to reside at the same residence after his election as before; that his commission was in full force and unrevoked; that he had not resigned or been removed from said office.

It further appears that the territory comprising Flagler's addition adjoined the original town plat of Tremont on the west, and that all of said addition and also part of said original town of Tremont was in Elm Grove township.

Mr. WILLIAM DON MAUS, for appellant.

Messrs. T. N. GREEN and G. F. SALTONSTALL, State's Attorney, for appellees.

WALL, P. J. The judgment of ouster was predicated upon the proposition that the appellant was not a resident of the village, and this upon the proposition that he had resided upon a part of the plat which had been vacated and thereby excluded from the corporate limits.

By the act of incorporation the limits of the town included "All the district embraced in the town plat of the original town of Tremont and the several additions to said town, which had been recorded." The territory so designated then constituted the territory of the town and it so remains now unless it has been affected by the assumed vacation of a part of Flagler's addition.

It seems to be conceded that Sawyer did legally vacate all of said plat except block 6, and we shall not inquire whether this is so or not, but so assuming, what effect was thereby produced upon the limits and boundaries of the corporation?

The making of a plat of a town or an addition, is for the purpose of subdividing the land into smaller parcels to be described by the terms lots and blocks, and to invest the public with certain rights in the streets, alleys and other public places therein designated.

It was often found that such plats were premature, or for other reasons were unnecessary, and in order to enable pro-

prietors of platted lands to restore them to their original condition, the act of 1847 provided a method whereby such plats, or a part thereof, might be vacated, and that the executing and recording of such writing should "operate to destroy the force and effect of the plat or map so vacated, and to divest all public right in the streets, alleys, commons and public grounds laid down or described in such map or plat."

Would such vacation operate, in the present case, to withdraw the land from the limits of the municipality? The act of incorporation of the town of Tremont declared the district then covered by certain plats should compose the territory of the proposed town.

The reference thus made to the original and additional plats was merely for the sake of convenience in pointing out the district or territory to be embraced within the town which was then created for the purpose of local government and welfare.

The act subsequently passed giving power to vacate plats, generally, was not intended to repeal or modify existing enactments fixing boundaries. It does not assume to do more than above set forth, that is, to provide a proceeding which shall operate to set aside the effect of platting upon the use and description of the land embraced in the part vacated.

The only result accomplished, is to restore the particular parcel to the condition it was in before it was platted. It might be that a part of a plat or a whole plat so vacated would be entirely surrounded by other platted lands lying within the corporation. In such case, if the theory of the appellees is to prevail, we should have the strange and awkward situation of a parcel wholly within the corporate jurisdiction, but foreign to it, an isolated spot over which the municipal laws were inoperative, and to reach which, from any direction, it would be necessary to cross municipal territory.

Much confusion and annoyance would follow such a condition of things, and it can not be supposed that the legislature intended the act to be so construed.

There is no necessity that all the land within the corporate

boundaries shall be platted, and as a matter of fact it frequently happens that large unplatted tracts are inside the limits. The municipal jurisdiction, so far as local improvement or local government is concerned, is not barred by such fact. The ordinances may be enforced, and all the municipal functions may be exercised without hinderance.

Applying the ordinary canons of construction and considering fully the provisions of all the legislation involved, we feel constrained to hold that the vacation of a part, or all of Flagler's plat, after the act of incorporation, did not change the boundaries of the corporation.

Whatever was within the lines remained there. Certain streets and alleys were abolished, and the public right to use them was gone. There was merely a change in the use of the particular grounds so far as the public was concerned, and the description of the various parcels known as lots and blocks had been dropped.

The owner might treat the property as though he had never platted it, but the corporate boundaries were unaffected.

We are of opinion that the conclusion reached in the Circuit Court was erroneous. The judgment will be reversed and the cause remanded, with directions to enter judgment for the defendant in the information, and that he recover his costs against the relators.

*Reversed and remanded.*